ROSENBLUM v. WEIR.

(Supreme Court, Appellate Term. December 16, 1908.)

1. CARRIERS (§ 134*)—DELIVERY TO CARRIERS—EVIDENCE.

In an action against an express company for loss of goods, evidence *held* to warrant a finding that the goods were actually delivered to one of defendant's drivers, whose duty it was to collect packages for transportation.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 588; Dec. Dig. § 134.*]

2. CARRIERS (§ 118*)—LOSS OF GOODS—CARRIER'S AGENTS—ACCIDENT—MISCONDUCT.

Where goods were delivered to a receiving driver of an express company and were lost, the carrier was responsible, whether the loss resulted from the driver's negligence or actual fraudulent misappropriation.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 518; Dec. Dig. § 118.*]

Hendrick, J., dissenting.

Appeal from Municipal Court, Borough of Manhattan, Second District.

Action by Pescha Rosenblum against Levi C. Weir as president of the Adams Express Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Argued before GIEGERICH, HENDRICK, and FORD, JJ.

Cravath, Henderson & De Gersdorff (Arthur W. Clement, of counsel), for appellant.

Samuel Rosenthal (Leopold Freiman, of counsel), for respondent.

GIEGERICH, J. The action is to recover the value of goods claimed to have been delivered to the defendant the Adams Express Company, but which failed to reach the destination to which they were directed to be sent.

The principal issue litigated was whether the goods were received by servants of the defendant company, or whether they were called for and received by impostors impersonating the defendant's servants.

The principal facts in evidence on the plaintiff's part on this point are that an order was sent to the defendant's local office which served the neighborhood, namely, at Grand street, corner of Chrystie; the goods in question being at 102 Monroe street. An entry was accordingly made on the call book of the defendant company under date December 31, 1907, to the effect that there were two packages at 102 Monroe street, borough of Manhattan, at the address "Dorofsky"; the latter being the person with whom the plaintiff had left the goods in charge to be forwarded by express. Such order to call was left at the defendant's office in the forenoon of such day, and late in the afternoon of the same day, between 5 and 6 o'clock, a wagon bearing the name "Adams Express Company" stopped in front of the apartment house in which Mrs. Dorofsky lived. A driver remained in charge of the wagon while a young man wearing a uniform and the cap of the defendant company went up to Mrs. Dorofsky's apartment, and obtained the goods in question, which he took down and placed in the wagon referred to. At the time he received the goods he delivered to Mrs. Dorofsky a receipt, but on the next day he called again and asked for it, saying that it was worthless, and that he would give her another. While she turned to attend to some household duty, he disappeared with the receipt, leaving nothing in its place.

On behalf of the defense it was shown that one of the drivers named Cochran on the 31st of December, 1907, wrote his name opposite the call contained in the defendant's book, but that, being unable to make the call, he carried it over to the next day. The book in which the entry was made was kept on the counter of the defendant's office and could be looked at by any of the defendant's drivers, and the drivers took such calls as they wished to take, although sometimes a clerk would direct them what calls to take, but there was no evidence that on this occasion any such orders were given. It further appeared that about 30 men were employed on the Grand street route. Upon such evidence I think the fair conclusion to reach is that the goods in question were delivered to some of the various drivers of the defendant. Whether the goods were lost through accident and the driver at fault subsequently regained the receipt in order to shield himself, or whether there was an intention to defraud from the beginning, is not material, because the defendant should be held liable in either event.

This case is broadly distinguishable from Abrams v. Platt, 23 Misc. Rep. 637, 52 N. Y. Supp. 153, on which the defendant relies. There the plaintiff was a regular customer, who was furnished with a card which he hung out in front of his store when he wished an express wagon to call. He also had a book of blank express receipts. One day when he had exhibited his placard a stranger, who had the name of the company inscribed on his cap, came into the store, while there was on the other side of the street what is described in the evidence as a "sort of yellow wagon" on which the company's name appeared. This stranger signed the receipt and took away the goods. It did not even appear that he came from or returned to the wagon referred to. In such a case it is manifest that a customer of an express com-

pany, by displaying such a card in front of his place of business, gives an invitation to any dishonest person to impersonate an express company employé and seek to get possession of the goods under false pretenses. There is no ground to infer that a person calling for goods under such circumstances in fact represents the company whose services are desired. But in the present instance there was no open sign displayed, but a call was sent to the local office of the defendant company, which call was placed on the defendant company's book which was open to its various and numerous drivers having duties to perform in that territory, and who, it seems, were given a large measure of liberty as to what calls they should make. Under such circumstances, it is fair to conclude that persons wearing the insignia of the express company and driving a wagon bearing its name and calling for the goods obtained their knowledge that goods were there to be expressed from the company's books and were the company's servants. There are other points of difference between the Abrams Case and the present one, but enough has been said to distinguish them.

It might be further observed that upon the trial the defendant did not call nor attempt to call its various drivers assigned to duty in this district to testify that they had never received such goods, but only called the driver whose name appeared upon the call book in connection with the entry in question. His denial in no wise rebutted the inference that some other driver had called for and received the goods.

The judgment should be affirmed, with costs.

FORD, J., concurs.

HENDRICK, J. (dissenting). There was no proof in the case that the package in question was ever delivered to the defendant or to one of its authorized agents, and the case comes squarely within the principle laid down in Abrams v. Platt, 23 Misc. Rep. 637, 52 N. Y. Supp. 153. The distinction urged by the respondent that in this case the package was actually placed on a wagon bearing the name "Adams Express Co." does not bring it within the authority of Leuis v. Van Horn, 24 Misc. Rep. 765, 53 N. Y. Supp. 546. In that case the proof was that the package was placed on the same wagon "which called at the plaintiff's place every night for the goods to be delivered." In this case the proof was that it was placed on a wagon bearing the defendant's name, which does not identify the wagon as that of the defendant.

The theory upon which the case was determined by the trial justice cannot be sustained on the evidence. Assuming that the defendant was negligent in its method of keeping the call book, there is no proof to the effect that the injury in this case was the direct result of such negligence. An independent illegal act by a third person has intervened to cause the injury, and the defendant is excused.

The judgment should be reversed and new trial ordered, with costs to appellant to abide the event.