# Concordia Silk Hosiery Co. v. Pennsylvania Railroad Co., Appellant.

*Carriers—Common carriers—Railroads—Interstate commerce—Interstate shipments—Bill of lading—Stipulation as to notice—Waiver—Federal question.*

A railroad company cannot waive a stipulation in a bill of lading covering an interstate movement of goods, requiring that claims must be made to the carrier in writing within four months after a reasonable time for the delivery of the goods has elapsed. The construction of such a bill of lading involves a Federal question, and must be determined according to the requirements of Federal legislation and the decisions of the Supreme Court of the United States interpreting such legislation.

Under the Federal decisions the carrier can no more release the shipper from such a stipulation as to notice, than it could excuse him from the payment of the established freight rate.

Argued Oct. 11, 1917.   Appeal, No. 245, Oct. T., 1917, by defendant, from judgment of C. P. No. 4, Philadelphia Co., Sept. T., 1916, No. 3667, on verdict for plaintiff in case of Concordia Silk Hosiery Co. v. Pennsylvania Railroad Company. Before ORLADY, P. J., HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Reversed.

Assumpsit for a total loss of an interstate shipment of goods.　Before FINLETTER, J.

At the trial it appeared that the defense was that no written notice had been given to the carrier in accordance with a stipulation contained in the bill of lading. The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $168.20.　Defendant appealed.

*Error assigned,* amongst others, was in overruling defendant's motion for judgment n. o. v.

*Sharswood Brinton,* with him *Francis B. Biddle,* for appellant.—Under the case of Adams Express Company v. Croninger, 226 U. S. 491, the law of Pennsylvania is in no wise applicable to a shipment of goods under the Carmack Amendment.　Therefore the Pennsylvania law is no longer pertinent.

Discriminations are not confined merely to discrimination in rates: Chicago & Alton R. R. v. Kirby, 225 U. S. 155; Atchison, Topeka & Santa Fe Ry. Co. v. Robinson, 233 U. S. 173; Southern Ry. Co. v. Prescott, 240 U. S. 632.

It is against the public policy, expressed in the Interstate Commerce Act that carriers should waive a regulation in their schedule requiring a written notice, just as much as that they should waive the published rates, as is apparent from the two following cases: Georgia, Florida & Alabama Ry. Co., v. Blish Milling Co., 241 U. S. 190; St. Louis, Iron Mountain & Southern Ry. Co. v. Starbird, 243 U. S. 592.

*Daniel C. Donoghue,* for appellee.—The law is clear in Pennsylvania that such a requirement for written notice before the carrier can be held liable for loss or damage to goods in transit, may be waived: Eckert v. Penna. R. R. Co., 211 Pa. 267; Shoemaker v. Adams Express Co., 51 Pa. Superior Ct. 284.

OPINION BY HEAD, J., April 22, 1918:

The few material facts presented by the record and the single question of law arising thereon are briefly and clearly stated in the following excerpt from the opinion of the learned court below directing the entry of judgment on a verdict in favor of the plaintiff. "Plaintiff sues to recover the value of certain goods delivered to the defendant for transportation from Philadelphia to Montreal. The bill of lading contained a stipulation that 'claims must be made in writing to the carrier at the point of delivery or at the point of origin within four months after delivery of the property, or, in case of failure to make delivery, then within four months after a reasonable time for delivery has elapsed.' By agreement of counsel it was admitted the goods were totally lost in transit and that the period in which notice must be given ended on November 26, 1915. No written notice of claim was sent to the defendant but it was argued by the plaintiff that the defendant had, by its conduct, waived the requirement of a writing. The circumstances and dealings of the parties were proved and the question was left to the jury whether they showed a waiver of written notice. The jury found for the plaintiff. The only question now raised is, can the requirement of written notice (in the bill of lading) be waived by the carrier?"

If the terms of the bill of lading and the obligations imposed by it respectively on shipper and carrier are to be considered as a private contract between the parties and construed as such contracts would be construed under the established law of the State of Pennsylvania, there can be no doubt the conclusion reached by the learned court below would be abundantly supported by authority. On the other hand, if the proper construction of the terms of the bill of lading necessarily involves a Federal question, then clearly the rights and obligations of shipper and carrier must be determined according to the requirements of Federal legislation and the decisions

of the Supreme Court of the United States interpreting such legislation.

It will not be necessary to enter into an elaborate review of the Federal legislation of recent years fixing the status of shipper and carrier nor of the many decisions of our highest legal tribunal expounding and applying such legislation to the many questions that have arisen thereunder. A study of these cases and a brief reference to but two of the most recent ones convinces us that the question involved in the present case must be disposed of as a Federal question, and necessarily our judgment must follow the path marked out by the highest authority. In Georgia, Florida & Alabama Railroad Co. v. Blish Milling Co., 241 U. S. 190, the defendant company failed to deliver a consignment of flour to the consignee named in the bill of lading. Because of the failure of the consignee to accept the flour, the carrier company sold it and delivered it to another than the consignee. Thereupon the latter brought a common law action of trover and conversion to recover the value of the property alleged to have been thus unlawfully converted. The carrier company defended, inter alia, on the ground that the plaintiff had failed to comply with the stipulation in the bill of lading requiring a written notice of its claim for the loss or damage to the property within a time specified. To this contention the plaintiff replied it was not suing on the contract incorporated in the bill of lading, but had brought a common law action to recover the value of its property which had been wrongfully converted. The Supreme Court of the United States, after disposing of the first question there raised and citing many cases to show that, since the Carmack Amendment, the remedy of a shipper was not confined to an action against the initial carrier, thus deals with the question in which we are immediately concerned: "These decisions also established that the question as to the proper construction of the bill of lading is a Federal question......In this view, it necessarily follows that

the effect of the stipulation could not be escaped by the mere form of the action. The action is in trover, but, as the State court said: 'If we look beyond its technical denomination, the scope and effect of the action is nothing more than that of an action for damages against the delivering carrier. It is urged, however, that the carrier, in making the misdelivery, converted the flour and thus abandoned the contract.' But the parties could not waive the terms of the contract under which the shipment was made pursuant to the Federal act; nor could the carrier by its conduct give the shipper the right to ignore these terms which were applicable to that conduct, and hold the carrier to a different responsibility from that fixed by the agreement made under the published tariffs and regulations. A different view would antagonize the plain policy of the act and open the door to the very abuses at which the act was aimed." This clear and emphatic language can in no proper sense be regarded as obiter dicta. It is not of importance that the judgment of the State court was affirmed on the distinctive ground that a telegram advising the carrier that the property of the shipper had been lost or destroyed and that damages would be claimed was a notice in writing which fully satisfied the requirements of the bill of lading.

In the later case of St. Louis, Iron Mountain & Southern R. R. Co. v. Starbird, 243 U. S. 592, the question before us was again considered and disposed of by the same court. There a number of carloads of peaches had been shipped from the State of Arkansas to the City of New York. The initial carrier which issued the uniform bill of lading required by Federal law was the defendant. The delivering carrier was the Pennsylvania Company and the peaches reached the consignee at the dock of the last named company in bad condition. Verbal notice of this fact was promptly given by the consignee to the dock superintendent of the delivering company but no notice in writing, in accordance with the terms of the bill of lading, was given either to the initial or the de-

livering carrier. In the answer filed, after suit had been brought, the carrier, inter alia, defended on the ground that the obligation of the shipper, plainly stated in the bill of lading, had not been complied with. The court first of all determines there was a Federal question involved because the defendant set up, by way of defense, a failure on the part of the shipper to comply with the provisions of the uniform bill of lading issued by the carrier in obedience to the Federal statute. Mr. Justice DAY, speaking for the court, uses this language: "As the shipment in this case was interstate, there can be no question that since the decision in the Croninger Case the parties (not the carrier) are held to the responsibilities imposed by the Federal law to the exclusion of all other rules of obligation." The opinion then goes on to consider and discuss the reasonable character of such a stipulation and the conclusion was this: "As to No. 275 the writ sued out by the railroad company, the judgment of the Supreme Court of Arkansas is reversed and the cause remanded, etc."

In the light of these decisions it would be useless for us to undertake, in an elaborate discussion, to show how necessarily these judgments must have been entered if the paramount public policy evidenced by the whole course of recent legislation and decision is to be kept effective. We are of opinion the learned court below fell into error in permitting the jury to find the carrier company had released this particular shipper from the obligation, imposed on all shippers, by the terms of the bill of lading, which terms had been found to be reasonable and had been filed and published as a part of the schedule indicating upon what terms and under what conditions the property of any and every shipper would be received by the carrier and transported.

Judgment reversed and the record is remitted to the court below with direction to enter judgment for the defendant non obstante.