Tentzer *v.* Reading Company.

Argued November 12, 1930.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham, Baldrige and Whitmore, JJ.

*B. D. Oliensis,* for appellant.—Plaintiff was entitled to maintain his action against the carrier for the non-delivery of the goods, notwithstanding his reconsignment of them: Storey v. Hershey, 19 Pa. Superior Ct. 485; Bucklin v. Davidson, 155 Pa. 362; Robb v. Express Co., 78 Pa. Superior Ct. 1.

This action is controlled by Federal Law: Adams Exp. Co. v. Croninger, 226 U. S. 491; Missouri P. R. Co. v. Porter, 273 U. S. 341.

*George Gowen Parry,* and with him *Harold C. Roberts,* for appellee.—Plaintiff was not a proper party plaintiff in this action: Steamboat Company v. Atkins, 22 Pa. 522; Dooley v. N. Y. C. & H. R. R. Co., 62 Pa. Superior Ct. 237; Dannemiller v. Kirkpatrick, 201 Pa. 218; Pittsburgh Provision etc. Co. v. Cudahy Packing Co., 260 Pa. 135.

The action was at common law and did not involve the Cummins Amendment: Cayuga Bank v. Daniels, 47 N. Y. 631; Marine Bank v. Baringer, 46 Pa. Superior Ct. 510.

Opinion by Keller, J., February 27, 1931:

This is an action by a consignee and owner of goods who ordered them reconsigned to a third person, against a common carrier for damages for failure to make delivery of the shipment.

The court below entered a compulsory nonsuit—which it subsequently refused to take off—on two grounds: (1) Because there was no sufficient evidence of non-delivery of the shipment; (2) because, having ordered the shipment reconsigned to another person, the plaintiff could not maintain the action. We think the court was wrong in both positions.

(1) The plaintiff's statement averred, inter alia, that he had purchased from the Mountain City Ice & Beverage Co. two hundred one-half barrels of cereal beverage, containing less than one-half of one per cent of alcohol by volume, which had been delivered on April 7, 1927, by the seller to the defendant at Frackville, Pa., to be shipped over its lines to Atlantic City, N. J., and delivered to plaintiff, freight prepaid. The bill of lading attached to the plaintiff's statement was in the form prescribed by the Interstate Commerce Commission for a straight bill of lading, and showed that the defendant had received Reading Car No. 11660, consigned to Joseph Tentzer, the plaintiff, Atlantic City, N. J., freight prepaid, containing the above-stated shipment—"shippers and loaders count"—"weight 39,000 lbs. subject to correction"—the routing and delivery to be over defendant's lines, which included Atlantic City Railroad Company; that upon arrival of the said beverage at Atlantic City and while it was still in the possession of defendant the plaintiff had given defendant a re-

consignment order directing that said beverage be delivered to Quaker City Beverage Company, Shackamaxon Street, Philadelphia, which defendant had undertaken to do, but had failed to make delivery as ordered.

The affidavit of defense denied, somewhat ambiguously perhaps, many of the preliminary or inducing averments of the statement, but admitted the receipt of the car No. 11660, duly loaded, and the issuance of its bill of lading, in the form averred in the statement, and the contractual obligations resulting therefrom; it admitted the receipt on April 13, 1927 at Philadelphia of an order to reconsign said car from Atlantic City, N. J., to Shackamaxon Street Station, Philadelphia, but averred that it was not at that time in its possession, custody or control; that on or about April 10, 1927, it delivered the said car to one of its connecting carriers for forwarding to Atlantic City and that the contents of said car were delivered at Atlantic City and receipted for by the consignee on April 12, 1927, and after delivery were stored at Atlantic City in the name of Chelsea Beverage Co., under which name S. Singer and Alfred A. Rogers co-partners were conducting their business of dealing in beverages in Atlantic City, New Jersey; and denied the loss claimed by plaintiff.

This would seem to create a clear cut issue of fact which could be submitted to a jury without much objection or cumbering of the record; but the result was otherwise.

The plaintiff produced evidence,—and for the purposes of this appeal, we must give him the benefit of all the evidence, and inferences to be drawn therefrom, favorable to him,—of the sale to him of two hundred half-barrels of cereal beverage from the Mountain City Ice and Beverage Co., his payment for the same, the shipment of the same over defendant's

lines in Reading Car No. 11660 on April 7, 1927 consigned to him, at Atlantic City, N. J., with freight prepaid, and the issuance by defendant of the original bill of lading covering said shipment, which the plaintiff produced in court; that on April 13, 1927, he called at the general offices of the defendant company in Philadelphia, and saw Mr. Craver, the diversion and reconsigning clerk, and learned from him that the car had not yet arrived in Atlantic City; that he showed Mr. Craver the bill of lading and told him that he wanted the car reconsigned to Quaker City Beverage Co., Shackamaxon Street, Philadelphia,—to whom he had sold or agreed to sell the contents—, and signed a reconsignment order to that effect prepared by Mr. Craver, guaranteeing the charges, which order was produced in court by the defendant; that a couple of days later he went to the Shackamaxon Street Station and finding that the car had not yet arrived, he called at the Reading Terminal, so informed Mr. Craver and was told by him to wait another day or so; that he waited two days, but the car did not arrive and he then went back and told Mr. Craver. He was then sent to see a Mr. Wilson, the freight claim agent of the defendant. He showed Mr. Wilson the bill of lading and explained that the cereal beverage had not arrived at the Shackamaxon Street Station and that he had waited long enough; that Mr. Wilson then went out of his office and came back with a batch of papers and after looking over them said, "The prohibition agent has got your beer;" and told him to fill out a claim on the form he furnished; and that a few days later he received a postal card from W. J. Wilson, freight claim agent, dated April 25, 1927, acknowledging the receipt of claim No. 426562-3 on behalf of the Reading Company and directing him to use that number in any further correspondence regarding the claim; and that subsequently (May 3, 1927) the freight claim agent wrote his attorney disclaiming any liabil-

ity, but not disputing the averment of non-delivery, contained in the attorney's letter; and that plaintiff never got the cereal beverage.

We think the reasonable intendment of this evidence would support a finding that delivery of the car of cereal beverage was not made at the Shackamaxon Street Station, Philadelphia, as directed in the reconsignment order; that the statement of Mr. Wilson above quoted was by way of reason for, or explanation of, the defendant's failure to deliver the car at Shackamaxon Street Station. See Wood v. Transportation Co., 73 Pa. Superior Ct. 132, 135-6. We pay no heed, in this consideration to the statement in open court of defendant's attorney, after the foregoing evidence was received,—which while not evidence in the case, was before the court and is part of the record—, that the defense was based on an alleged delivery of the car to Singer & Rogers, at Atlantic City, who, it was claimed, were authorized to receive it, before the reconsignment order was received by defendant company, and that they were prepared to prove such prior delivery; which, of course, was wholly inconsistent with a delivery to the reconsignee at Philadelphia, but in harmony with the issue framed by the pleadings.

(2) As to the other branch of the case, in Berman v. Adams Express Co., 73 Pa. Superior Ct. 314, where the same position was taken by the carrier, we approved the language of Judge BAILEY of the court below in disposing of the contention, as follows: "As to the last and newest reason it is a sufficient answer to say that the contract of shipment was with the consignor, the plaintiff, and if the defendant failed to comply with the contract it has no standing to say that the action should be brought by the consignee. It has nothing to do with the title as between the consignor and the consignee." (Appeal refused by the Supreme Court, 75 Pa. Superior Ct. XXVII). This was in line with the language of Mr. Justice GREEN

in Bacharach v. Chester Freight Line, 133 Pa. 414, where the carrier taking the opposite tack, had contended that the consignor (Talcot) and not the consignees (Bacharach et al.) should have brought the action: "As to the right of these plaintiffs to maintain the action there can be no question, and whether Talcot has an interest in their recovery is not a matter of any concern to the defendant, who is a mere carrier." We considered the same question, at some length in Robb v. American Express Co., 78 Pa. Superior Ct. 1, 6, (appeal refused by the Supreme Court, 78 Pa. Superior Ct. XXVII), and speaking of the general rules laid down in the Sales Act of 1915 (May 19, 1915, P. L. 543) Section 19, for the passing of title as between buyer and seller, we said: "These rules are enunciated in the Sales Act for the purpose of ascertaining the intention of the parties unless otherwise expressed and were enacted to fix and determine the respective rights and liabilities of buyer and seller as between themselves and persons in privity with or claiming under them. They were not inserted for the benefit of the common carrier, in order that it might evade its contract for the safe transportation of goods by asserting that the shipper with whom it made the contract of shipment was not the owner of the goods covered thereby. The seller who ships the goods, whether, as between himself and the consignee, their legal title or ownership may have passed to the consignee on delivery to the carrier, still has a beneficial interest in them, and having such beneficial interest, he may sue for damages for breach of his contract: Steamboat Co. v. Atkins, 22 Pa. 522; Lloyd v. Haugh, 223 Pa. 148, 155; especially so, where as here, the consignees appear in support of plaintiff's action and the defendant is not subject to claims from two sources. 'The better doctrine is that, where the consignor makes the contract of shipment with the carrier, he may maintain an action thereon for loss of, or in-

jury to, the consignment irrespective of the question of ownership, in such case it being considered that the privity of contract between the consignor and the carrier is a sufficient foundation on which to base the action': 10 C. J. 348-9...... Furthermore, the shipments in suit were to points outside the State. They were therefore interstate in character and are governed by the federal laws regulating interstate commerce. The Act of Congress of February 24, 1887, c. 104, section 20, 24 Stat. 386, as amended by Acts of June 29, 1906, c. 3591, section 7, 34 Stat. 595; March 4, 1915, c. 176, section 1, 38 Stat. 1196; and Aug. 9, 1916, c. 301, 39 Stat. 441, Barnes Federal Code, section 7976, U. S. Comp. Stat. 8604a, [now, U. S. Code, Title 49, sec. 20, par. 11] provides that the carrier shall be liable to the lawful holder of the receipt or bill of lading—in this case, this plaintiff,—for the loss, damage or injury caused by it, etc., to the property received for transportation, and suit may be instituted against the carrier by such holder: Adams Express Co. v. Croninger, 226 U. S. 491.''

There is no practical distinction between that case and this, except the fact, which was not controlling, that in that case the consignees appeared and testified in support of plaintiff's action, while in this the reconsignee could not be reached by subpoena; but it is not claimed or asserted that the reconsignee, the Quaker City Beverage Co., ever made any claim against defendant on this account and at the time of trial it was long past the time when any claim could be presented; so that the defendant runs no risk of a claim from two sources. To the same effect, see Penna. R. R. Co. v. Olivit, 243 U. S. 574. 582.

The proof on behalf of the plaintiff was that he was the owner of the cereal beverage when shipped from Frackville, Pa., consigned to him at Atlantic City, N. J. He was the consignee in and the holder of the original bill of lading, and as such could have sued

defendant in case there had been no reconsignment order and the car had not been delivered to him at Atlantic City. The contract of carriage applied to the reconsignment when ordered, and on such reconsignment plaintiff became in effect the consignor, and the person to whom delivery was to be made, the consignee: C. & N. Ry. Co. v. Picard, 98 Pa. Superior Ct. 134, 136; Forest Green Farmers Elevator Co. v. Davis, Dir. Genl., 270 S. W. 394 (Mo.); Meyers v. Norfolk Southern R. Co., 88 S. E. 149 (N. C.). But the new consignee had not paid, and never did pay, for the cereal beverage; the plaintiff had guaranteed the charges: L. & N. Railroad Co. v. Central I. & C. Co., 265 U. S. 59, 68; Porter v. Penna. R. R. Co., 215 N. Y. Supp. 727; and his interest in the goods was such as to support an action in his name against the defendant company for its negligence or that of its connecting carriers, in failing to make delivery as contracted for: Forest Green Farmers Elevator Company v. Davis, Dir. General, supra; Blustein v. Am. Ry. Exp. Co., 123 S. E. 566, 567 (W. Va.). Nearly all of the cases relied on by appellee were disputes between buyer and seller, which were not the concern of the carrier; and none of them from this state, in which a carrier in interstate commerce was involved, was decided since the amendments to the interstate commerce act above noted. Even without reference to them, delivery to a carrier is not always delivery to the buyer, for "If the contract requires the seller to deliver the goods to the buyer, or at a particular place, or to pay the freight or cost of transportation to the buyer, or to a particular place, the property does not pass until the goods have been delivered to the buyer or reached the place agreed upon" (Sales Act, Sec. 19, Rule 5). See also Pittsburgh P. & P. Co. v. Cudahy P. Co., 260 Pa. 135, 139. If this subject were to be gone into at all, the plaintiff should have been allowed to show just what his

transaction with the Quaker City Beverage Co. was and the terms of sale and delivery. [Assignment one.]

But we are satisfied that in the circumstances of this case the plaintiff had a right to bring the action and is entitled to a verdict if he can establish the facts alleged in his statement to the satisfaction of the jury: Norfolk Southern R. Co. v. Norfolk Truckers' Exchange, 88 S. E. 318 (Va.). The shipment was an interstate one. This clearly appeared from the plaintiff's statement and the bill of lading attached to and forming a part of it. It had to be carried out in conformity with the provisions of the federal transportation acts; no other course was legally possible: Adams Exp. Co. v. Croninger, supra; Boston & Maine Ra'lroad v. Hooker, 233 U. S. 97; Kansas City Southern Ry. v. Carl, 227 U. S. 639; Missouri P. R. Co. v. Porter, 273 U. S. 341, 346. The bill of lading was issued pursuant to such federal authority and so showed on its face. The plaintiff had a right to declare on this contract of carriage, which was one in interstate commerce, and base his cause of action thereon, without any special reference in his statement to the federal transportation acts, even though the said contract must be construed in the light of the decisions interpreting said acts: Robb v. Am. Exp. Co., supra; Concordia Silk Hosiery Co. v. Penna. R. Co., 69 Pa. Superior Ct. 361. When it appears from the plaintiff's statement that the contract sued upon is a transaction in interstate commerce, special reference to the acts of Congress governing such shipments is not essential: Hogarty v. P. & R. Ry. Co., 255 Pa. 236, 243.

The first and third assignments of error are sustained. The second is dismissed. The entry of a compulsory nonsuit is not assignable for error: Haverly v. Mercur, 78 Pa. 257.

The judgment is reversed with a procedendo.